**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**BOARD OF TRUSTEES OF THE**　　　　　　**CASE NO. 1:13-cv-4**
**PLUMBERS, PIPEFITTERS &**
**MECHANICAL EQUIPMENT SERVICE,**　　　**Judge Michael R. Barrett**
**LOCAL UNION NO. 392 PENSION FUND,**
**ET AL.,**

　　　　　　**Plaintiffs,**

　　**v.**

**SUSAN L. HUMBERT D/B/A GENESIS**
**MECHANICAL, ET AL.,**

　　　　　　**Defendants.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court on the cross-motions for summary judgment of

Defendants Genesis Mechanical Services, Inc. and Steve Reece, Defendants Steven Humbert and

Susan Humbert, and Plaintiffs Board of Trustees of the Plumbers, Pipe Fitters & Mechanical

Equipment Service, Local Union No. 392 Pension Fund, *et al*. ("Trust Funds"). (Docs. 42, 44,

45).[1] The Trust Funds have filed a sealed response in opposition to the motions for summary

judgment of Defendants Genesis Mechanical, Inc. and Steve Reece and Defendants Steven

Humbert and Susan Humbert (Doc. 51), and the Defendants have filed their respective replies in

support of their motions (Doc. 54; Doc. 53). Defendants Genesis Mechanical, Inc. and Steve

Reece and Defendants Steven Humbert and Susan Humbert also have filed responses in

opposition to the Trust Funds' motion for summary judgment (Docs. 47, 50), and the Trust

Funds have filed their reply in support of their motion (Doc. 52). The Trust Funds also were

---

[1] The Trust Funds' motion for summary judgment and the corresponding exhibits are sealed.

1

granted leave to file a sur-reply in opposition to the motion for summary judgment of Defendants Steven Humbert and Susan Humbert. (Doc. 58).

## I.    FACTUAL BACKGROUND

The Trust Funds operate various funds for Local Union No. 392, which serve the Plumbers, Pipefitters & Mechanical Equipment Contractors.

In or around the summer of 2004, Steve Humbert began operating under the name "Genesis Mechanical," which was a pipefitting and welding business. (Doc. 41-3, PageId 403, 406). Genesis Mechanical had seven customers. (Doc. 46, PageId 1068). While its primary business was with the Proctor & Gamble Company, it also included among its customers Food Services, JM Smucker, Johnson Controls, Randy Weekley, Triversity Construction, and Genesis Mechanical Services ("GMS")[2]. (Doc. 41-3, PageId 408; Doc. 46, PageId 1068).

The Trust Funds produced documentation showing a signature of the name Susan L. Humbert on a signature page for a collective bargaining agreement with the Plumbers, Pipefitters & Mechanical Equipment Service, Local Union No. 392 ("Union No. 392"), which signature was dated October 1, 2004. (Doc. 46, PageId 710).[3] That signature page does not include an actual signature from Union No. 392 or any of its representatives. (*Id.*). That signature page

---

[2] As will be explained below, the entity known as Genesis Mechanical Services later incorporated. That entity is Genesis Mechanical Services, Inc. The original entity will be referred to as GMS while the entity as later incorporated will be referred to as Genesis Mechanical Services, Inc. in order to make the distinction clear.

[3] In the reply in support of their motion for summary judgment, the Humberts attach writing samples of Susan Humbert from the relevant time period as a means of showing that the signature at issue is not her signature. (Doc. 53-2). The issue of signature discrepancies was not raised by Defendants in their principal briefs but instead was raised for the first time in the reply brief. It thus presents a new issue for the Court's consideration to which the opposing party generally has no right to respond or counter in a substantive fashion. Compounding the problem associated with raising this new substantive issue in the reply brief is that it appears that this is the first time Defendants have raised this particular issue in this litigation and the first time that these signature samples have been provided to the Trust Funds. As a matter of litigation fairness and procedure, the Court therefore considers this issue waived and will not consider the writing samples in ruling upon Defendants' motions for summary judgment *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *Tonguette v. Sun Life & Health Ins. Co. (U.S.)*, No. 2:12-cv-00006, 2013 U.S. Dist. LEXIS 60716, at *11-12 (S.D. Ohio Apr. 29, 2013). Additionally, the Court need not consider these signature samples in deciding the Trust Funds' motion for summary judgment as they were neither referenced in nor included by Defendants in opposing the Trust Funds' motion for summary judgment.

also indicates that the collective bargaining agreement was executed by the authorized representatives of Union No. 392 and Mechanical Contractors Association of Cincinnati on June 1, 2000. (*Id.*). The collective bargaining agreement to which it corresponds is the June 1, 2003 through May 31, 2006 collective bargaining agreement ("2003 CBA"). (*Id.*; *see also* Doc. 51-2, PageId 1250-1320). The 2003 CBA, and in particular, Article XVIII of the 2003 CBA entitled "Mechanical Equipment Service Division Commercial Agreement between the Mechanical Contractors Association of Cincinnati and the Plumbers, Pipefitters & Mechanical Equipment Service Local Union No. 392, Effective June 1, 2000 – May 31, 2006" contains a signature page that includes that June 1, 2000 effective date. (Doc. 51-2, PageId 1297). The Preamble to Article XVIII provides:

> This document is a collective bargaining agreement between the Union and the Employer Association entered into for the purpose of establishing the wages, benefits, terms and conditions of employment of the Employees of any Employer represented by the Employer Association and/or any Employer who signs this Agreement, and for the purpose of establishing procedures for resolving disputes and adjusting grievances and promoting labor and peace between Employers and Employees.

(*Id.*, PageId 1298). Defendants deny that Susan Humbert had anything to do with Genesis Mechanical or was authorized to sign any documents on behalf of Genesis Mechanical. (Doc. 41-3, PageId 419); (Doc. 53-2, PageId 1397).[4] W-2's from 2009 show that Susan Humbert was paid in some capacity by CBS for work performed on behalf of Genesis Mechanical or GMS. (Doc. 46, PageId 1023). In addition, Union No. 392's files contains a "Contractor Sign-Up Sheet" for Genesis Mechanical, Inc., dated October 1, 2004, listing the "Owners Name" as

---

[4] Although the Humberts attach to their reply brief an affidavit of Susan Humbert in which she avers that she was involved in Genesis Mechanical for four weeks in 2009, that testimony contradicts her deposition testimony and is insufficient to create a genuine issue of material fact on summary judgment. *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir.. 1997) ("[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his early deposition testimony."); *see also Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 448 (6th Cir. 2008) (quoting *Penny*, 128 F.3d at 415).

"Susan L. Humbert" and the "Contact" as "Steve Humbert."  (Doc. 51-1, PageId 1246).  When Union No. 392 receives communication for an employer that it desires to become a signatory contractor, it follows a standard protocol, which has been in place since 2000.  (Doc. 51-1, PageId 1242).  The protocol includes delivering copies of the CBA to the employer requesting that an officer execute the CBA with one executed copy being maintained by Union No. 392, and requesting that the employer complete a Contractor Sign-Up Sheet that is submitted along with the executed copy of the CBA.  (*Id.*).  Union No. 392's file for Genesis Mechanical contained both the executed page of the CBA and the Contractor Sign-Up Sheet, which contained identical execution dates.  (*Id.*, PageId 1242-43, 1246; Doc. 46, PageId 710).  In November 2004, Genesis Mechanical submitted a fringe benefit contribution report to Union No. 392.  (Doc. 46, PageId 712).  The fringe benefit contribution report contains the following language:  "The above named contractor certifies that the report includes only employees covered under the terms of a collective bargaining agreement with the United Association or a United Association Local Union and does not include a sole proprietor nor partner of the contractor."  (*Id.*).  In December 2004, Genesis Mechanical also submitted a fringe benefit contribution report bearing the same language.  (*Id.* at PageId 713).

Beginning in 2005, Steve Humbert hired CBS to manage the administrative aspects of Genesis Mechanical's operations, including but not limited to invoicing, accounts payable, and payroll.  (Doc. 41-3, PageId 404-06).  The administrative aspects of Genesis Mechanical's operations were conducted in the offices of CBS, located at 5958 Harrison Avenue, Cincinnati, Ohio 45248, until approximately December 2012.  (Doc. 41-4, PageId 451; Doc. 43-1, PageId 404-05; Doc. 46, PageId 914).  Genesis Mechanical used CBS's address, as well as its phone number and its fax number on its invoices.  (Doc. 46, PageId 914).  For business cards, Steve

4

Humbert utilized his cell phone number. (Doc. 41-3, PageId 407). Genesis Mechanical also used the EIN of CBS for its W-2s. (Doc. 46, PageId 1008-56; *see also* Doc. 41-4, PageId 455).

At the direction of Steve Humbert, CBS prepared fringe benefit contribution reports that were submitted to the Trust Funds along with the contributions on a monthly basis through 2010. (Doc. 41-3, PageId 434). Genesis Mechanical, however, continued contributions through approximately July 2012. (Doc. 41-3, PageId 422; Doc. 46, PageId 712-878). Further, a check dated June 1, 2007 to Union No. 392 from CBS on behalf of Genesis Mechanical is for the amount of $5,000 and is labeled "Escrow Fund." (Doc. 46, PageId 919-22).[5] This amount corresponds with the amount of the $5,000 surety bond from any signatory employers for the first three employees that is required by the terms of the 2003 CBA, as well as the terms of the 2006 CBA. (Doc. 46, PageId 686; Doc. 51-2, PageId 1274).

In June 2008, CBS contacted a Union No. 392 representative indicating that Genesis Mechanical wanted to request that Reece go to work for it. (Doc. 51-1, PageId 1248). Around that same time, Reece approached Steve Humbert to ask if he could use part of the Genesis Mechanical name for the operation he intended to start. (Doc. 41-1, PageId 352; Doc. 41-3, PageId 426). Humbert agreed and Reece began operating GMS. (Doc. 41-1, PageId 352; Doc. 41-3, PageId 426;). Reece's business focused on commercial and residential heating and air conditioning. (Doc. 41-1, PageId 355). Reece has over 100 customers, including Johnson Controls, Food Services, and the Proctor and Gamble Company. (Doc. 41-1, PageId 362, 373; Doc. 46, PageId 1070-77).[6] Reece averred that, at times, he would subcontract out work to

---

[5] The notation on the check indicates it is for Genesis Mechanical, Inc. It is not clear, however, who made this notation.

[6] GMS's customer list indicates that Johnson Controls was a customer and the Union Plaintiffs have produced invoices from GMS to Johnson Controls; as such, Reece's self-serving denial that GMS did any work on behalf of Johnson Controls is given no weight as it is plainly contradicted by the documentary evidence. (*Compare* Doc. 41-1, PageId 362 and Doc. 46, PageId 963-64 *with* Doc. 46, PageId 1073).

Genesis Mechanical, but invoices demonstrated no designation of Genesis Mechanical/Steve Humbert as a subcontractor, Reece did not disclose to customers that Humbert was a subcontractor, and no subcontractor agreement exists. (Doc. 41-1, PageId 358, 371; Doc. 41-3, PageId 431). Reece also utilized CBS to handle administrative and payroll functions. (Doc. 41-1, PageId 354). His invoices for GMS utilized CBS's address. (Doc. 41-1, PageId 354; Doc. 46, PageId 963). His invoices listed the phone number and the fax number for CBS as well. (Doc. 46, PageId 963). Similar to Genesis Mechanical, GMS also utilized the EIN of CBS for its W-2s. (Doc. 46, PageId 1008-56; *see also* Doc. 41-4, PageId 455). There is no indication, however, that Genesis Mechanical and GMS share tools or equipment, or that the individuals employed to do the work performed by Reece ever perform work for Humbert, and visa versa. (*See generally* Docs. 41-1, 41-4).

Reece never signed the collective bargaining agreement with Union No. 392. (Doc. 41-1, PageId 368).[7] Reece, however, directed CBS to pay his employees at a higher wage rate than what was required under the CBA. (Doc. 41-1, PageId 364). He further directed CBS to pay contributions to the Trust Funds on behalf of his covered employees at rates prescribed by the CBA. (Doc. 41-1, PageId 364). Union dues and vacation dues also were deducted from the weekly paychecks of Reece's employees. (Id.). Through CBS, Reece submitted monthly reports to the Trust Funds and Union on behalf of those covered employees performing work under him. (Doc. 41-1, PageId 364, 367; Doc. 46, PageId 764-876). Those employees were reported on the same fringe benefit contribution reports as Steven Humbert's employees. (*See id.*). All of the payments to the Trust Funds on behalf of Genesis Mechanical and GMS were issued on the same checks, with the payor being CBS. (*Id.*; Doc. 46, PageId 880). Nothing on the fringe benefit

---

[7] The parties dispute whether Reece had a conversation with Tommy Baker of Union No. 392 regarding signing the CBA on behalf of GMS. *Compare* (Doc. 41-1, PageId 368) *with* (Doc. 51-1, PageId 1242-430).

contribution reports or the checks distinguished Genesis Mechanical from GMS. (*See* Doc. 46, PageId 764-876).

The Trust Funds' payroll compliance auditor conducted an audit of the books and payroll records for Genesis Mechanical in 2009. (Doc. 46, PageId 880, 969-97). The auditor avers that Genesis Mechanical is the only entity ever known to the Trust Funds to be in business. (Doc. 46, PageId 880). During the audit, the auditor reviewed payroll records maintained by CBS for all individuals that previously had been reported to the Trust Funds, which included those employees working with Humbert and those employees working with Reece. (Doc. 46, PageId 880, 969-97). At that time, no indication was made to the auditor that Genesis Mechanical and GMS considered themselves to be separate entities. (Doc. 46, PageId 880).

The website created for GMS listed Reece and those employees who worked with him, as well as Steven Humbert as "Pipe and Fabrication Coordinator," Thomas Groppenbecker of CBS as "Accounting," and Michele Wubbering of CBS as "Accounts Receivable/Payable." (Doc. 41-1, PageId 360; Doc. 46, PageId 1003). The email addresses listed for Reece, Philip Thyen, and Douglas Biehl utilized the domain name genesismechanicalservices.com. (Doc. 46, PageId 1003). The email address listed for Humbert used the domain name fuse.net, and the email addresses listed for Groppenbecker and Wubbering used the domain name solutions-cbs.com. (*Id.*). Reece's explanation for the use of the various names on the website is that he wanted to give the appearance that GMS was a larger company than it actually was at the time.

In or about March 2010, Reece submitted to Union No. 392 an application for the Equalization and Stabilization Program under the name Genesis Mechanical Services. (Doc. 41-1, PageId 367; Doc. 46, PageId 1079-87). Reece never received any money as a result of the Equalization and Stabilization Program. (Doc. 41-1, PageId 367).

7

On or about December 13, 2010, Reece informed Union No. 392 that he was resigning his employment as Local 392 Pipefitter MES, effective December 31, 2010. (Doc. 46, PageId 99). He did so on GMS letterhead. (*Id.*). By letter dated May 14, 2012, Biehl, Reece's employee and now a GMS owner, also resigned his membership with Union 392. (Doc. 46, PageId 1000; *see also* Doc. 41-1, PageId 355-57). Thyen, another employee working with Reece and now an owner, also resigned his union membership by letter dated May 17, 2012. (Doc. 46, PageId 1001; *see also* Doc. 41-1, PageId 355-57).

On September 30, 2013, the Trust Funds filed their First Amended Complaint pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, alleging that Reece and GMS are alter-egos of Susan Humbert and Steven Humbert/Genesis Mechanical and are jointly and severally liable for breaches of the collective bargaining agreements. (Doc. 27).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Once the moving party has met its burden of production, the nonmoving party must present significant probative evidence in support of his position to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.   ANALYSIS

The issues presented to the Court by the cross-motions for summary judgment are:  (A) whether Reece/GMS/Genesis Mechnical, Inc. are independently bound by and in breach of the CBA as a result of their conduct; and (B) whether Reece/GMS/Genesis Mechanical, Inc. are bound by the CBA because they are the alter ego of the Humberts/Genesis Mechanical who are bound by the CBA.  Although the Court concludes that the evidence conclusively shows that Reece/Genesis Mechanical, Inc. are not, standing alone, bound by the CBA, it nevertheless grants summary judgment in favor of the Trust Funds upon a finding that the Humberts/Genesis Mechanical are bound by the CBA and Reece/Genesis Mechanical, Inc. are likewise bound by the CBA as the alter ego of the Humberts/Genesis Mechanical.[8]

### A.   Whether Reece/GMS/Genesis Mechanical, Inc. are Independently Bound by the CBA

---

[8] For the Trust Funds to prevail on summary judgment, they had to show either that (1) Reece/GMS/Genesis Mechanical, Inc. is bound as the alter ego of the Humberts/Genesis Mechanical who also are bound to the CBA or (2) Reece/GMS/Genesis Mechanical, Inc. independently are bound to the CBA.  On the other hand, Defendants could prevail on summary judgment only upon showing both that (1) Reece/GMS/Genesis Mechanical, Inc. are not bound as the alter ego of the Humberts/Genesis Mechanical and (2) Reece/GMS/Genesis Mechanical, Inc. independently are not bound to the CBA.  Because the Trust Funds met their summary judgment of showing that Reece/GMS/Genesis Mechanical, Inc. is bound as the alter ego of the Humberts/Genesis Mechanical who also are bound to the CBA, summary judgment in favor of the Trust Funds is appropriate.

It is undisputed that neither Reece nor anyone else signed the CBA on behalf of GMS or Genesis Mechanical, Inc. The Trust Funds contend, however, that the conduct of Reece/GMS alone is sufficient. Defendants dispute that contention. Having reviewed the evidence as required under Rule 56 in favor of the Trust Funds and in favor of Defendants, the Court concludes that there are no genuine issues of material fact and that Defendants have shown by undisputed evidence that Reece/Genesis Mechanical, Inc. are not independently bound by the CBA.

Section 302(a) of the LMRA, 29 U.S.C. § 186(a), restricts the circumstances under which an employer may contribute monies to employee groups. The statutory prohibition exists to prevent misappropriation or dissipation of money that is owed to union employees. *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989). To protect fringe benefits, however, an exception exists in Section 302(c)(5)(B) of the LMRA that authorizes employers to make contributions to trust funds established by employee representatives "for the sole and exclusive benefit of the employees" if "the detailed basis on which such payments are to be made is specified in a *written agreement* with the employer[.]" 29 U.S.C. § 186(c)(5)(B) (emphasis added). *See also Bd. of Trs. of the Plumbers, Pipe Fitters & Mechanical Equip. Serv., Local Union No. 392 Pension Fund v. B&B Mechanical Servs.*, No. 13-4017, 2015 U.S. App. LEXIS 22759, at *11 (6th Cir. Dec. 29, 2015).

That written agreement may be the collective bargaining agreement or some other document indicating that the employer is bound. *B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *11. There is no statutory requirement that the employer must sign the written agreement to be bound by it. *B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *12 (citing *Nat'l Leadburners Health & Welfare Fund v. O.G. Kelley & Co.*, 129 F.3d 372, 375 (6th Cir.

1997)).  The Sixth Circuit indeed has recently held that the employers' association of which the employer is a member may bind an employer to a collective bargaining agreement requiring employer contributions to the trust funds without the employer signing the collective bargaining agreement individually and without the employer giving the association express written authority to act on its behalf.  *B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *13-14.

Critically absent in this case is evidence that Union No. 392 had a written agreement with Reece/GMS/Genesis Mechanical, Inc. as an individual employer.  Again, it is undisputed that neither Reece nor anyone else on behalf of GMS or Genesis Mechanical, Inc. signed the CBA at any point in time.  Further, there has been no evidence presented that Reece/GMS/Genesis Mechanical, Inc. were members of the employers' association so as to provide the employers' association with authority to negotiate and enter the CBA on behalf of Reece/GMS/Genesis Mechanical, Inc.  Notably, Reece did not start GMS until 2008, which is after the employers' association and Union No. 392 entered into the 2006 CBA.  Further, the 2006 CBA that would have been in effect at that time contains an express signature requirement for those employers not represented by the association:

> This document is a collective bargaining agreement between the Union and Employer Association entered into for the purpose of establishing the wages, benefits, terms and conditions of employment of the employees of any employer represented by the Employer Association *and/ or any employer who signs this agreement* . . . .
>
> In the event that a contractor not now a member of a party of the first part, is accepted for membership by said party pursuant to its rules and regulations, this contract shall be made available for adoption to such contractor, who shall evidence his intentions in this regard by *executing a copy of this agreement* with the Union.

(Doc. 46, PageId 675) (emphasis added).  "When interpreting ERISA plan provisions, general principles of contract law dictate that we interpret the provisions according to their plain meaning in an ordinary and popular sense.  In applying the 'plain meaning' analysis, we must

give effect to the unambiguous terms of an ERISA plan." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000) (internal citations and quotation marks omitted). Thus, in the absence of evidence that Reece or GMS was represented by the employers' association at the time of execution of the 2006 CBA or at any other time, or otherwise expressly assented to the CBA, the Court cannot conclude that Reece/GMS/Genesis Mechanical, Inc. agreed to be bound by the CBA in this respect. *See Merrimen v. Paul F. Rost Electric, Inc.*, 861 F.2d 135, 138-39 (6th Cir. 1988); *see also B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *14-15.

Although the Trust Funds contend that the conduct of Reece/GMS alone is sufficient under the Sixth Circuit's decision in *Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Northwestern Construction*, No. 95-2379 & 96-1346, 1997 U.S. App. LEXIS 15440, at *2-3 (6th Cir. June 23, 1997), the Court disagrees. In *Michigan Bricklayers*, the Sixth Circuit did not hold that conduct alone, in the absence of a binding written agreement, can bind an employer to a CBA. Instead, it concluded that the employer, who had assented to be bound by the original CBA, continued to be bound by the CBA during the period between the expiration of the original CBA and the signing of the new CBA as a result of its conduct evidencing its intent to continue to be bound. That conduct included continuing to prepare benefit fund contribution reports and make the corresponding payments, continuing to make payroll deductions for union dues under the terms of the expired CBA, and increasing the amount of payroll deductions in accordance with the terms of the new CBA before it was signed. *Id.* The distinction between that case and the present case is that the employer in that case actually had entered into the original CBA prior to its expiration whereas in the present case there is no evidence that Reece/GMS ever entered into a written agreement, expired or otherwise, that bound it to the

CBA with the Union.  *See id.*[9]  *Cf. B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *24-24 (citing to *Michigan Bricklayers* but declining to decide "whether an employer's course of conduct alone is sufficient to demonstrate that the employer is bound to a written agreement requiring the payment of contributions").

To the extent that the Trust Funds contend that Reece/GMS's single application for and written name on a single Memorandum of Understanding for wage subsidies under the Equality and Stabilization Program on behalf of "Genesis Mechanical Services" constitutes a binding written agreement sufficient to satisfy § 302(c)(5)(B) of the LMRA, the evidence to that extent is likewise lacking.  As an initial matter, the Trust Funds provide no argument as to why the application or MOU should constitute a written agreement that would bind Reece/GMS/Genesis Mechanical, Inc. to the CBA standing alone.  Further, the application and MOU at issue here are distinguishable from those at issue in *B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *23-24.  Although the MOU includes language that with the exception of the changes permitted by the MOU, the 2006 CBA "shall remain in full force and effect in accordance with its terms, and this Memorandum shall be concurrent with that Agreement, or until completion of this job," which mirrors that in the four MOUs in *B&B Mechanical*, there is no evidence in the present case that Reece/GMS ever was a signatory to the CBA, that Reece/GMS ever was a member of the employers' association, that Reece/GMS separately signed a participation agreement, that Reece/GMS ever actually accepted or received the wage subsidies pursuant to the MOU, or that

---

[9] Similarly, *Trustees of the Plumbers & Steamfitters Local Union No. 43 Health & Welfare Fund v. Crawford*, No. 1:06-cv-245, 2007 U.S. Dist. LEXIS 92934, at *17-24 (E.D. Tenn. Dec. 18, 2007), is distinguishable from the present case on the basis that the course of conduct which bound the employer was preceded by the signing of a prior CBA.  *Board of Trustees of the Plumbers, Pipe Fitters & Mechanical Equipment Service, Local Union No. 392 Pension Fund v. B&B Mechanical Services*, No. 13-4017, 2015 U.S. App. LEXIS 22759 (6th Cir. Dec. 29, 2015), is likewise distinguishable in that the employer in that case was bound by the collective bargaining agreement because, unlike here, it undisputedly was a member of the employers' association that negotiated the collective bargaining agreement on the employers' behalf, even though it never itself signed the collective bargaining agreement and never expressly assented to the representation of the employers' association.

Reece/GMS was ever required to contribute pursuant to the MOU or had any continuing contribution obligation as a result of the MOU. *Cf. B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *23-24 (concluding that the employer's four applications for and receipt of wage subsidies, signed participation agreement acknowledging that the program was designed to help union contractors compete with non-union contractors, and four MOUs providing that the CBA shall otherwise remain in full force in effect with the wage-change exceptions showed that "[the employer] acknowledged each time [it] accepted wage subsidies from the Union that [it] was bound by the terms of the CBA to make contributions to the Funds").

As for the submissions of contribution reports to the Trust Funds by Reece/GMS, which listed the employees working with Reece/GMS and included certification language, they likewise are insufficient to demonstrate that Reece/GMS independently had a binding obligation pursuant to the CBA to contribute to the Trust Funds. Even assuming the contribution reports were submitted on behalf of GMS as an individual employer, that issue of fact is immaterial because the certification language in the contribution report is insufficient, standing alone, to bind Reece/GMS to the CBA in the absence of some other binding written agreement setting forth the detailed basis for such payments as required by § 302 of the LMRA. *See Cent. States, Southeast & Southwest Areas Pension Fund v. General Materials, Inc.*, 535 F.3d 506, 509-10 (6th Cir. 2008). Unlike in *B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *23, the contribution reports here are not coupled with any written agreement binding upon Reece/GMS as an individual employer. Nor is there evidence similar to that in *B&B Mechanical* that Reece/GMS certified in contribution reports sent to the National Pension Fund that it was "a party to a written agreement requiring contributions." *B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *22.

Accordingly, the Court concludes that Reece/GMS/Genesis Mechanical, Inc. are not bound as an individual employer separate from the Humberts/Genesis Mechanical.

**B.  Whether Reece/GMS/Genesis Mechanical, Inc. are Bound by the CBA as Alter Egos of the Humberts/Genesis Mechanical**

The issue of whether Reece/GMS/Genesis Mechanical, Inc. are bound by and in breach of the CBA as alter egos of the Humberts/Genesis Mechanical requires a two part inquiry. First, the Court must determine whether the Humberts/Genesis Mechanical are bound by the CBA. Second, if the Humberts/Genesis Mechanical are bound, then the Court must determine whether Reece/GMS/Genesis Mechanical, Inc. are alter egos of the Humberts/Genesis Mechanical.

**1.  Whether the Humberts/Genesis Mechanical are Bound by the CBA**

The Trust Funds contend that the Humberts/Genesis Mechanical are bound by the CBA because Susan Humbert signed the 2003 CBA, which already had been executed by the Union, and because the continued course of conduct of the Humberts/Genesis Mechanical demonstrated an intent to be bound. Defendants, on the other hand, deny, through deposition testimony and affidavits of the Humberts, that Susan Humbert signed the 2003 CBA and/or had the necessary authority to sign the 2003 CBA.[10] They further contend that there are inconsistencies in the signature page and the 2003 CBA and a lack of signature by the Union that preclude the Humberts/Genesis Mechanical from being bound.

As explained *supra*, Section 302(a) of the LMRA, 29 U.S.C. § 186(a), restricts the circumstances under which an employer may contribute monies to employee groups. To protect fringe benefits, however, an exception exists in Section 302(c)(5)(B) of the LMRA that authorizes employers to make contributions to trust funds established by employee representatives "for the sole and exclusive benefit of the employees" if "the detailed basis on

_____

[10]As explained in a prior footnote, the writing samples of Susan Humbert attached to the reply brief shall not be considered here.

which such payments are to be made is specified in a *written agreement* with the employer[.]" 29 U.S.C. § 186(c)(5)(B) (emphasis added). *See also Bd. of Trs. of the Plumbers, Pipe Fitters & Mechanical Equip. Serv., Local Union No. 392 Pension Fund v. B&B Mechanical Servs.*, No. 13-4017, 2015 U.S. App. LEXIS 22759, at *11 (6th Cir. Dec. 29, 2015).

That written agreement may be the collective bargaining agreement or some other document indicating that the employer is bound. *B&B Mechanical*, 2015 U.S. App. LEXIS 22759, at *11. The employer does not, however, necessarily have to sign the written agreement to be bound and the employers' association may bind a member employer to a collective bargaining agreement without the employer signing the collective bargaining agreement individually and without the employer giving the employers' association express written authority to act on its behalf. *Id.* at *12-14.

Here, unlike in *B&B Mechanical*, there is no evidence presented as to whether Genesis Mechanical is or has ever maintained membership in the employers' association with which Union No. 392 negotiated the collective bargaining agreements. As such, the Court declines to decide that the Humberts/Genesis Mechanical are bound by the collective bargaining agreement based on the actions of the employers' association alone. Accordingly, the Court must proceed to decide whether the signature page with the purported signature of Susan Humbert, combined with the other evidence presented, binds Genesis Mechanical to the collective bargaining agreement.

In the absence of membership in the employers' association, the 2003 CBA requires a signature of the employer. (Doc. 51-2, PageId 1252-53).[11] Upon reviewing the evidence presented as required by Rule 56 on the cross-motions for summary judgment, the Court finds

---

[11] The 2003 CBA includes the same language as set forth previously with respect to the 2006 CBA.

that Defendants have presented no genuine issue of material fact and summary judgment in favor of the Trust Funds is warranted.[12]

First, Defendants' reliance on inconsistencies between the 2003 CBA and the signature page bearing the name Susan L. Humbert is unavailing.  The 2003 CBA produced by the Trust Funds (Doc. 51-2) undisputedly corroborates that the signature page is consistent with the signature page of the 2003 CBA, despite any date discrepancies.

Second, the 2003 CBA reflects that Union No. 392 and the employers' association "*have caused the same to be signed*."  (Doc. 51-2, PageId 1318).  The 2003 CBA does not require that the Union's signature be contemporaneous with the signature of the employer.

Third, there are no genuine issues of material fact that preclude summary judgment in favor of the Trust Funds on the issue of whether Susan Humbert signed the 2003 CBA, binding Genesis Mechanical.  The Trust Funds have presented a signature page, which is consistent with the signature page of the 2003 CBA, with the name Susan L. Humbert signed on it and which is dated October 1, 2004.  They also have presented a Contractor Sign-Up Sheet for "Genesis Mechanical, Inc." identifying Susan L. Humbert as the "Owner" and Steve Humbert as the "Contact" at an address that is consistent with Genesis Mechanical's subsequent contribution reports.  Like the signature page, the Contractor Sign-Up Sheet is dated October 1, 2004.  The Trust Funds also have presented evidence that these two documents were obtained from the file for Genesis Mechanical and are consistent with the protocol of Union No. 392 for signing up new contractors.  Further, the documentation plainly and undisputedly shows that Susan

---

[12] Defendants have not presented sufficient evidence to warrant the grant of summary judgment in their favor.

Humbert received compensation through CBS in 2009, which contradicts Defendants' contentions that Susan Humbert had absolutely no involvement in Genesis Mechanical.[13]

Beyond that, the undisputed evidence shows that Genesis Mechanical acted thereafter as a signatory contractor. In November 2004, approximately one month after the date on the signature page and the Contractor Sign-Up Sheet, Genesis Mechanical began obtaining the benefits of the CBA by submitting monthly contribution reports and payments to the Trust Funds as required by the CBA.[14] Genesis Mechanical continued to submit those contribution reports through June 2010 in compliance with the 2003 CBA and successor CBAs. Thereafter, in 2007, Genesis Mechanical submitted a surety bond in the amount required by the CBA, and in 2009 and 2011, Genesis Mechanical also did not protest to payroll audits of it by the Trust Funds. Further, consistent with Union policies for signatory contractors, Steve Humbert, as the owner of Genesis Mechanical, exempted himself as the one owner of the signatory employer for whom the employer did not have to contribute to the Trust Funds. Genesis Mechanical thus plainly manifested its intent to be bound by the CBA. *See B&B Mechanical*, 2015 U.S. App. LEXIS 22759; *Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Northwestern Constr.*, No. 95-2379 & 96-1346, 1997 U.S. App. LEXIS 15440, at *2-3 (6th Cir. June 23, 1997); *Trustees of the Plumbers & Steamfitters Local Union No. 43 Health & Welfare Fund v.*

---

[13] As discussed in a prior footnote, the affidavit of Susan Humbert in which she avers that she was involved in Genesis Mechanical for four weeks in 2009 may not be considered because that testimony contradicts her deposition testimony and is insufficient to create a genuine issue of material fact on summary judgment. *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir.. 1997) ("[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his early deposition testimony."); *see also Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 448 (6th Cir. 2008) (quoting *Penny*, 128 F.3d at 415).

[14] The parties do not dispute that Defendants would be bound by the successor CBAs upon signing the 2003 CBA. Further, it is noted that the 2003 CBA contains a renewal clause. *See Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund v. A & H Mech. Contrs.*, 100 F. App'x 396, 400-01 (6th Cir. 2004); *Trs. of the B.A.C. Local Ins. Fund v. Fantin Enters.*, 163 F.3d 965, 968-69 (6th Cir. 1998); *Trs. of the Plumbers & Steamfitters Local Union No. 43 Health & Welfare Fund v. Crawford*, No. 1:06-cv-245, 2007 U.S. Dist. LEXIS 92934, at *18 (E.D. Tenn. Dec. 18, 2007).

*Crawford*, No. 1:06-cv-245, 2007 U.S. Dist. LEXIS 92934, at *17-24 (E.D. Tenn. Dec. 18, 2007).[15]

Defendants' opposing evidence that Susan Humbert's signature is not authentic or was made without authority consists solely of the self-serving testimony of Susan Humbert and Steve Humbert through depositions and affidavits,[16] which is insufficient, in the absence of any corroborating evidence, to create a genuine issue of material fact on summary judgment. *See Operating Eng'rs Local 324 Health Care Plan v. Diversicon Excavating LLC*, No. 12-11492, 2015 U.S. Dist. LEXIS 5374, at *10 (E.D. Mich. Jan. 16, 2015) ("self-serving affidavits of companies' owners is insufficient to create a genuine issue of material fact to survive summary judgment"); *see also Laborers' Pension Fund v. RES Envtl. Servs.*, 377 F.3d 735, 739 (7th Cir. 2004) (holding that without specific information supporting generalized and conclusory allegations in affidavit, the affidavit failed to create a genuine issue of material fact to preclude summary judgment).[17] Further, a scintilla of evidence does not create a genuine issue of material fact to preclude summary judgment.

---

[15] Reece, in fact, testified as to Steve Humbert being a signatory contractor. (Doc. 41-1, PageId 368) ("Steve Humbert from Genesis Mechanical, signatory.").

[16] As explained in a prior footnote, the writing samples of Susan Humbert attached to the reply brief shall not be considered in ruling on summary judgment.

[17] In a non-binding state case, *U.S. Bank N.A. v. Bobo*, 2014-Ohio-4975, ¶¶16-19 (Ohio Ct. App. Nov. 5, 2014), the appellate court explained:

> Mere speculation and unsupported conclusory assertions are not sufficient to meet the nonmovants reciprocal burden under Civ. R. 56(E) to withstand summary judgment. A self-serving affidavit that is not corroborated by any evidence is insufficient to establish the existence of an issue of material fact. To conclude otherwise would enable the nonmoving party to avoid summary judgment in every case, crippling the use of Civ. R. 56 as a means to facilitate the early assessment of the merits of claims, pre-trial dismissal of meritless claims and defining and narrowing the issues for trial.

> [Defendant] did not submit any corroborating summary judgment evidence to support her claim the promissory note held by [Plaintiff] did not contain her authentic signature. Her affidavit mentions that when she inspected what [Plaintiff] claimed were the original note and mortgage during the litigation, she determined that her signature was different and that the paper was different than the copy she received at closing. She did not attach to her affidavit any of the copies she claimed to compare the alleged originals she inspected.

Accordingly, the Court concludes that the Trust Funds have shown no genuine issue of material fact exists such that the Humberts/Genesis Mechanical are bound by the CBAs.

### 2. Whether Reece/GMS/Genesis Mechanical, Inc. are the Alter Ego of the Humberts/Genesis Mechanical

The "alter ego" doctrine is an equitable one that has been applied when determining "whether two or more coexisting employers performing the same work are in fact one business, separated only in form." *NLRB v. Fullerton Transfer & Storage, Ltd.*, 910 F.2d 331, 336 (6th Cir. 1990); *see also Road Sprinkler Fitters Local Union No. 669 v. Dorn Sprinkler Co.*, 669 F.3d 790, 794 (6th Cir. 2012). "The doctrine operates to bind an employer to a collective bargaining agreement if it is found to be an alter ego of a signatory employer." *Trs. of the Detroit Carpenters Fringe Benefit Funds v. Indus. Contr., LLC*, 581 F.3d 313, 318 (6th Cir. 2009). In applying the doctrine, courts must consider "'whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership.'" *Fullerton*, 910 F.2d at 336 (quoting *Nelson Electric v. NLRB*, 638 F.2d 965, 968 (6th Cir. 1981)). "In applying these factors, no individual factor is outcome determinative; instead, 'all the relevant factors must be considered together.'" *Detroit Carpenters*, 581 F.3d at 318 (quoting *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 582 (6th Cir. 1986)); *see also Road*

---

. . . .

[W]e conclude that in the absence of corroborating evidence, [Defendant's] self-serving affidavit challenging the authenticity of her signature held by [Plaintiff] did not raise a genuine issue of material fact precluding summary judgment.

(internal quotations and citations omitted). *Accord: Fifth Third Bank v. Jones-Williams*, 2005-Ohio-4070, ¶28-29 (Ohio Ct. App. Aug. 9, 2005) ("In the [appellant's] affidavit, [appellant] asserted that the promissory note and the mortgage 'do not bear the bone fide signatures of [appellants].' Appellants did not present any additional evidence other than this self-serving affidavit, in support of their argument that their signatures on the note and the mortgage were forged. For example, appellants could have provided affidavits from non-expert witnesses who were familiar with their handwriting or an expert who would attest to the authenticity of their signatures. . . . Based on the foregoing, we find appellants have not satisfied their reciprocal burden as the nonmoving party to identify evidence to demonstrate that any genuine issue of material fact regarding the validity of the appellants' signatures must be preserved for trial.").

*Sprinkler Fitters*, 669 F.3d at 794 ("The [alter-ego] analysis is flexible and 'no one element should become a prerequisite to imposition of alter-ego status; rather, all the relevant factors must be considered together.'") (quoting *Allcoast Transfer*, 780 F.2d at 582).  Under Sixth Circuit precedents, the employer's intent to evade the obligations of a collective bargaining agreement may also be considered as a factor, but it is not a prerequisite to the imposition of alter-ego status.  *Detroit Carpenters*, 581 F.3d at 318 (citing *Fullerton*, 910 F.2d at 337).

Here, even when construed in the light most favorable to the Humberts and Reece/Genesis Mechanical, Inc., the record is replete with evidence of substantial entanglement between the Humberts/Genesis Mechanical and Reece/GMS from the outset.  Although there exists a factual dispute about whether Reece had a conversation with Baker in 2008 about starting his own business and declining to partner with Humbert, that dispute is immaterial.  The undisputed evidence shows that Reece purposefully chose to use the entirety of the Genesis Mechanical name when he began to operate as "Genesis Mechanical Services."  The undisputed evidence also shows that in June 2008, CBS sent an email to the Union about Genesis Mechanical wanting to hire Reece for work beginning in late June 2008.  In July 2008, a fringe benefit report was submitted on behalf of Genesis Mechanical which included the hours worked by Reece, as well as the hours worked by other Genesis Mechanical employees.  Such contribution reports on behalf of Genesis Mechanical continued to be submitted for Reece and/or those employees working with Reece until approximately June 2012.

Further, like Genesis Mechanical, Reece was performing work covered by the CBA to which Genesis Mechanical is a signatory.  *See Operating Eng'rs Local 324 Health Care Plan v. Diversicon Excavating LLC*, No. 12-11492, 2015 U.S. Dist. LEXIS 5374, at *11 (E.D. Mich. Jan. 16, 2015) (finding common purpose where both businesses performed work covered by the

CBA); *Trs. of the Tile, Marble & Terrazzo Ins. Trust Fund v. B&B Tile & Marble Co.*, No. 10-cv-10106, 2011 U.S. Dist. LEXIS 18511, at *12 (E.D. Mich. Feb. 24, 2011) ("A court may find a common business purpose exists when the work performed by both companies would be covered work under the collective bargaining agreement.") (citing *Elec. Workers Pension Trust Fund of Local Union #58 v. Sky Lite Elec., Inc.*, No. 09-10523, 2010 U.S. Dist. LEXIS 102756 (E.D. Mich. Sept. 28, 2010)).

From the outset, the two businesses also shared an accounting agency, CBS.  Initially, Reece shared the same bank account with Genesis Mechanical.  While separate books may have been maintained for the two businesses, the money of both companies nonetheless resided in the same account.  Although Reece/GMS eventually obtained a separate bank account, the two businesses remained substantially intertwined in multiple respects.

Reece performed work for three of Genesis Mechanical's six customers at various times, including Proctor & Gamble, Johnson Controls, and Food Services.  While that work amounted to a small percentage of Reece's overall work, the customers nonetheless overlapped.  *See Dobson Indus. v. Iron Workers Local Union No. 25*, 237 F. App'x 39, 46-47 (6th Cir. 2007) (alter-ego test satisfied where, among other things, the two entities had only six common customers).  In addition to those overlapping customers, Reece and Humbert worked on multiple projects together.  Although Reece and Humbert insist that those projects involved a contractor-subcontractor relationship, they did not disclose the contractor-subcontractor relationship to clients, did not distinguish the subcontractor on invoices, and tellingly, did not have a subcontractor agreement.  *Cement Masons' Pension Trust Fund – Detroit & Vicinity v. F & G Poured Walls, Inc.*, 797 F. Supp. 2d 845, 850 (E.D. Mich. 2011) ("The fact that no contracts or agreements exist between the business[es] detailing subcontracting, rent, etc., is extremely telling

in determining alter ego status, as it appears that [one party] can simply assign whichever name he wants to the job. Without any evidence of contracts or agreements between two businesses which purport to have a contractor/subcontractor relationship, there is no real separation or distinction between the two companies."); *see also Trs. of Detroit Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc.*, No. 11-cv-14656, 2014 U.S. Dist. LEXIS 59810, at *40 (E.D. Mich. Apr. 30, 2014) (relying on *Cement Masons' Pension Trust Fund*, 797 F. Supp. 2d at 850). Thus, the businesses of Humbert and Reece were virtually indistinguishable in this respect.

In addition to the above similarities between the businesses, the businesses utilized the same address (CBS's address), the same phone number (CBS's phone number), and the same fax number (CBS's fax number), despite using separate cell phones for some customer communications. Similarly, the businesses both utilized the same EIN for tax purposes, submitted contribution reports to the Trust Funds that included, without any distinction, employees of Genesis Mechanical and employees working with Reece, and submitted payments to the Trust Funds on the same check without any distinction between Genesis Mechanical and Reece/GMS. Both Reece and Humbert blindly permitted that to happen through CBS. Had GMS not done so, its contributions would have been illegal because, as explained previously, there exists no written agreement between GMS/Reece and the Union that would permit such contributions to be made. *Bd. of Trustees of the Plumbers, Pipe Fitters & Mechanical Equip. Serv., Local Union No. 392 Pension Fund v. B&B Mechanical Servs.*, No. 14-4017, 2015 U.S. App. LEXIS 22759, at *24 (6th Cir. Dec. 29, 2015) (citing *Merrimen v. Paul F. Rost Electric, Inc.*, 861 F.2d 135, 137 (6th Cir. 1988)). As a result, there was no distinction between the businesses with respect to the Trust Funds.

Further precluding a distinction between Genesis Mechanical and GMS is that GMS's website included Humbert with a title of "Pipe Fabrication Coordinator." While the email address of Humbert was different than that of Reece or others working with Reece, the website suggests that the two companies are intertwined. Indeed, Reece admitted that the purpose of including Humbert was to make GMS look like a larger company than it was – in other words, to give the appearance that Humbert was employed by GMS even if the two businesses believe they were operating separately. (Doc. 42-8, PageId 584). This single operation was further reflected when the Union auditor went to audit Genesis Mechanical and no one ever distinguished between the two businesses.

Thus, although Reece and Humbert did not necessarily perform the same day-to-day work with the same employees, Reece/GMS acted as part and parcel of Genesis Mechanical and obtained the benefits of a signatory contractor, without being subject to the full measure of obligations under the CBA, until Reece decided to operate GMS independently as Genesis Mechanical, Inc. When Genesis Mechanical, Inc. decided to stand on its own, it did so without any significant change in purpose, business, employees, customers, operations, or otherwise. Thus, while there are several characteristics of the work of Genesis Mechanical and Genesis Mechanical, Inc. that are different, the consideration of all of the relevant factors of the flexible alter-ego test together with the evidence in this case plainly demonstrates that Reece/GMS/Genesis Mechanical, Inc. are the alter ego of the Humberts/Genesis Mechanical.

## IV.    **CONCLUSION**

Given the above conclusions that the Humberts are bound by the CBA and Reece/GMS/Genesis Mechanical, Inc. are the alter ego of Genesis Mechanical, the motions for summary judgment of Defendants Genesis Mechanical, Inc. and Steve Reece and Defendants

Steven Humbert and Susan Humbert (Docs. 42 and 44) are **DENIED**, and the motion for summary judgment of Plaintiffs Board of Trustees of the Plumbers, Pipe Fitters & Mechanical Equipment Service, Local Union No. 392 Pension Fund, *et al.* (Doc. 45) is **GRANTED**.  It is hereby **ORDERED** that:

1. The Humberts, Genesis Mechanical, Reece, Genesis Mechanical, Inc. submit to a payroll compliance audit for the period of January 1, 2010 through the present.

2. The Humberts, Genesis Mechanical, Reece and Genesis Mechanical, Inc. comply with all obligations under the collective bargaining agreement, including but not limited to the obligation to pay contributions to the Trust Funds on a monthly basis.

3. Plaintiffs shall have leave to petition the Court for entry of judgment in sum certain to include all contributions revealed by the payroll compliance audit, including liquidated damages resulting from the unpaid contributions and Plaintiffs' attorney's fees and costs.

**IT IS SO ORDERED.**

s/Michael R. Barrett
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT