UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE PLUMBERS, PIPEFITTERS & MECHANICAL EQUIPMENT SERVICE, LOCAL UNION NO. 392 PENSION FUND, et al. | Case No.: 1:13cv004 |
| | Judge Michael R. Barrett |
| Plaintiffs, | |
| vs. | |
| SUSAN L. HUMBERT D/B/A GENESIS MECHANICAL, et al., | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court on: 1) Defendants Steve Reece and Genesis Mechanical Services, Inc.'s Motion for Reconsideration and/or Clarification (Doc. 62); 2) Defendants Steven Humbert and Susan Humbert, D/B/A Genesis Mechanical's Motion for Reconsideration and/or Clarification (Doc. 64); and 3) Plaintiffs' Motion to Compel Defendants' Compliance with Opinion and Order (Doc. 71). These motions are now fully briefed and ripe for review. The Court held a hearing on August 23, 2016.

**I. BACKGROUND**

The parties filed cross-motions for summary judgment. Upon review, the undersigned denied Defendants' respective motions for summary judgment (Docs. 42 and 44) and granted Plaintiffs' motion for summary judgment (Doc. 45). (Doc. 61).

The facts of this case were recited at length in the Opinion and Order and are incorporated here. Briefly, Plaintiffs Board of Trustees of the Plumbers, Pipe Fitters & Mechanical Equipment

Service, Local Union No. 392, Pension Fund, *et al.* operate various funds for Local Union No. 392, which serve plumbers, pipefitters, and mechanical equipment contractors. Steve Humbert began a pipefitting and welding business operating under the name "Genesis Mechanical" in 2004. Genesis Mechanical had seven customers. (Doc. 46, PageID 1068). The record includes a signature page for a collective bargaining agreement with Local Union No. 392 with a signature of the name Susan L. Humbert dated October 1, 2004. (Doc. 46, PageID 710). Her name is also listed as the owner of Genesis Mechanical on a Contractor Sign-Up Sheet. (Doc. 51-1, PageID 1246). Defendants deny that Susan Humbert had authority to sign on behalf of Genesis Mechanical, and deny she signed anything on behalf of Genesis Mechanical. (Id. at PageID 419). Moreover, Defendants deny Susan Humbert had anything to do with Genesis Mechanical. (Id.). Despite this contention, W-2's from 2009 show that Susan Humbert was paid for work in some capacity performed on behalf of Genesis Mechanical.

In 2008, Steve Reece approached Steve Humbert to ask if he could use part of the Genesis Mechanical name for an operation he intended to start. (Doc. 41-1, PageID 352; Doc 41-3, PageID 426). With Humbert's permission, Reece began operating Genesis Mechanical Services ("GMS"). (Id.). Reece's business focused on commercial and residential heating and air conditioning. (Doc. 41-1, PageID 355). Reece had over 100 customers – a list which included some of Genesis Mechanical's customers. (Doc. 41-1, PageID 362, 373; Doc. 46, PageID 1070-77).

Both companies used CBS to handle administrative and payroll functions. (Doc. 41-1, PageID 354). Both companies used the EIN of CBS for its W-2's. (Doc. 46, PageID 1008-56; *see also* Doc. 41-4, PageID 455). Moreover, according to Reece, he would sometimes subcontract out work to Genesis Mechanical, despite the lack of a subcontractor agreement. (Doc. 41-1, PageID 358, 371).

2

There were two primary issues before the Court on summary judgment: 1) whether Reece/GMS/Genesis Mechanical, Inc. is independently bound by and in breach of the CBA as a result of their conduct[1]; and 2) whether Reece/GMS/Genesis Mechanical, Inc. is bound by the CBA because they are alter egos of the Humberts/Genesis Mechanical who are bound by the CBA. The undersigned concluded that Reece/GMS was not, standing alone, bound by the CBA, but nevertheless granted summary judgment in favor of the Trust Funds upon a finding that the Humberts/Genesis Mechanical are bound by the CBA and Reece/GMS is likewise bound by the CBA as the alter ego of the Humberts/Genesis Mechanical. (Doc. 61, PageID 1469).

Reece/GMS filed a motion for reconsideration (Doc. 62), as did the Humberts/Genesis Mechanical (Doc. 64). For ease of discussion, the motions are addressed out of order.

## II. STANDARD

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, such motions are treated as a motion to amend a judgment under Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380, 382 (6th Cir.1991); *Shivers v. Grubbs*, 747 F. Supp. 434, 436 (S.D. Ohio 1990). The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, and is reversible only for abuse of discretion. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).

There are three grounds for amending a judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at that time the dispositive motion was decided; or (3) to correct a clear error of law or to prevent manifest injustice. *GenCorp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *Berridge v. Heiser*, 993 F. Supp. 1136, 1146-47 (S.D. Ohio 1997).

---

[1] This issue is not presently before the Court. A recitation of the facts regarding the alleged conduct in this regard is detailed at length in the Court's Opinion and Order (Doc. 61).

3

### III. ANALYSIS

#### A. The Humbert/Genesis Mechanical Bound by the CBA

The Humberts/Genesis Mechanical ask the Court to reconsider its finding that they are bound by the CBA. Attached to Humbert's reply brief is the affidavit of Susan Humbert. In it, she avers that she never signed the CBA or the Contractor Sign-Up Sheet on behalf of Genesis Mechanical. In deciding the motions for summary judgment, the undersigned did not consider the affidavit of Susan Humbert, finding that it contradicted her earlier deposition testimony. (Doc. 61, PageID 1462-63, 1478). Specifically, the Court explained that because she averred that she worked for Genesis Mechanical for four weeks in 2009, she contradicted her earlier deposition testimony that she did not have any involvement with Genesis Mechanical.

The Humberts argue that Susan Humbert's affidavit should have been considered. They argue that her denial of involvement with Genesis Mechanical in 2004 does not contradict her deposition testimony. Moreover, they contend that Plaintiffs did not ask Susan Humbert whether she had any role with Genesis Mechanical in the past; rather, they only asked if she had any role with Genesis Mechanical at the time of her deposition to which she answered "no." Plaintiffs argue that assertion is false, and point out that she answered "no" to the question "Have you [done any sales for Genesis Mechanical] at any point in the past." (Doc. 42-4, PageID 546).

The Court declines to reconsider its Opinion and Order in this regard. The Court remains unconvinced that Susan Humbert had no role in Genesis Mechanical. Regardless, Susan Humbert averred she had never done any sales for Genesis Mechanical, yet she was paid by Genesis Mechanical in 2009. Thus, her affidavit contradicts her prior testimony and is insufficient to create a genuine issue of material fact. *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997) ("[A] party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary

4

judgment has been made, that essentially contradicts his early deposition testimony."); *see also Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 448 (6th Cir. 2008) (quoting *Penny*, 128 F.3d at 415)

Moreover, in the Opinion and Order, the Court pointed to numerous facts after the CBA was signed in 2004, which show Genesis Mechanical's intent to be bound by the CBA. First, the "Contractor Sign-Up Sheet" for Genesis Mechanical, submitted in conjunction with the executed copy of the CBA, lists the "Owners Name" as "Susan L. Humbert" and the "Contact" as "Steve Humbert." (Doc. 51-1, PageID 1246). In November and December 2004, Genesis Mechanical submitted a fringe benefit contribution report certifying that the report included only employees covered under the terms of a CBA. (Doc. 46, PageID 712-13). Fringe benefit reports continued to be submitted to the Trust Funds on a monthly basis through 2010, along with contributions. (Doc. 41-3, PageID 434). The undisputed evidence in the record shows that Genesis Mechanical continued contributions through approximately July 2012. (Doc. 41-3, PageID 422; Doc. 46, PageID 712-878). Finally, a $5,000 check to Union No. 392 from CBS on behalf of Genesis Mechanical was issued on June 1, 2007, which corresponds with the amount of the $5,000 surety bond from any signatory employers for the first three employees required by the terms of the 2003 and 2006 CBA. (Doc. 46, PageID 686, 912-22; Doc. 51-2, PageID 1274).

Thus, based upon Genesis Mechanical's course of conduct, the Court declines to reconsider its decision. The undisputed evidence shows that Genesis Mechanical acted as a signatory contractor and manifested its intent to be bound by the CBA (*See* Doc. 61, PageID 1478). Accordingly, amending the judgment would not prevent a clear error of law and thus, reconsideration is not appropriate.

### B. Alter Ego Analysis

#### 1. Reece/GMS

Reece/GMS likewise asks the Court to reconsider its finding that it is bound by the CBA as the alter ego of the Humberts/Genesis Mechanical. Reece/GMS primarily argues the Court only considered the "operations" factor of the alter ego test, and failed to consider the other five factors. In determining whether two or more employers are alter egos, courts consider "whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." *NLRB v. Fullerton Transfer,* 910 F.2d 331, 336 (6th Cir. 1990) (quoting *Nelson Electric v. NLRB*, 638 F.2d 965, 968 (6th Cir. 1981)). "The analysis is flexible and no one element should become a prerequisite to imposition of alter-ego status; rather, all the relevant factors must be considered together." *Rd. Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co.*, 669 F.3d 790, 794 (6th Cir. 2012). Although the result does not change, the Court addresses each factor in turn.

##### a. Management

There is little evidence in the record with respect to overlapping management and thus, at first glance, this factor would trend in Defendants' favor. It is undisputed, however, that in July 2008, a fringe benefit report was submitted on behalf of Genesis Mechanical which included hours worked by Reece, as well as hours worked by other Genesis Mechanical employees. Contribution reports submitted by Genesis Mechanical continued to include Reece and/or employees working with Reece until around June 2012. Consequently, it appears as though Reece and Humbert, at the very least, shared employees after Reece started operating GMS. Nevertheless, because there is no evidence of overlap with respect to management, the Court finds this factor to be neutral.

6

### b. Business Purpose

Defendants argue that different job titles—Reece/GMS is an HVAC contractor and Humbert/Genesis Mechanical was a pipefitter—preclude them from having the same business purpose. Plaintiffs' point out that both types of work are included within the trade jurisdiction of the Union. (2003-2006 CBA, Ar. IV. Section 2; Ex. 2). Defendants argue that the Court improperly relied on Michigan federal district court decisions, despite courts in this district looking to the actual nature of the businesses when analyzing this factor.[2] (Doc. 62, PageID 1493). While not binding, the Court once again finds the reasoning in *Operating Eng'rs Local 324 Health Care Plan v. Diversicon Excavating LLC*, No. 12-11492, 2015 U.S. Dist. LEXIS 5374, at *11 (E.D. Mich. Jan. 16, 2015) persuasive.[3] Defendants cite no authority in support of their position that the Court's reliance on the above was improper. Accordingly, the Court finds this factor weighs in favor of alter ego status.

### c. Operations

As the Court previously explained, the operations of the Humberts/Genesis Mechanical and Reece/GMS are substantially identical. The list of examples is extensive and non-exhaustive, but is repeated here: Reece chose to use the entirety of the Genesis Mechanical name when he began to operate GMS; the two businesses shared an accounting agency, CBS, and in fact it was the same office for both; they shared an address (CBS's address), a phone number (CBS's phone number), and the same fax number (CBS's fax number); Reece initially shared a bank account with Genesis Mechanical; the businesses used the same EIN for tax purposes; they submitted contribution

---

[2] Defendants cite *Bd. of Trs. of the Plumbers, Pipefitters & Mechanical Equip. Serv. v. R. & T. Schneider Plumbing Co.*, No. 1:13-cv-858, 2015 U.S. Dist. LEXIS 89917 at *48 (S.D. Ohio July 10, 2015) in support of their argument. Of interest, the court in that case found, when considering all the factors together, including the weight of evidence presented with respect to each factor, that the two companies at issue were alter egos of one another. Although the court determined some of the factors weighed against an alter-ego finding, the court found the business purpose, operations, equipment, and customer factors weighed in favor of alter ego status.

[3] The court found a common business purpose where both businesses performed work covered by the CBA.

reports to the Trust Funds that did not distinguish between the employees of each business; the businesses submitted payments to the Trust Funds using one check without any distinction between the two; Reece and Humbert were included on each other's websites; and finally, when the Union auditor went to audit Genesis Mechanical, no one bothered to distinguish the two businesses.  Considering the foregoing, this factor weighs heavily in favor of alter ego status.

### d. Equipment

Plaintiffs argue that because the businesses are transitory, there are no tools or vehicles to share.  Nevertheless, it is undisputed that the two companies did not share equipment and thus, this factor weighs against alter ego status.

### e. Customers

Defendants argue that while Reece/GMS has over 300 customers, the Humberts/Genesis Mechanical work primarily with only one customer – Proctor & Gamble.  The Court finds this is not inconsistent with the Opinion and Order finding there was some limited overlap between the two customer bases.  Reece performed work for three of Genesis Mechanical's six customers at various times, but the Court acknowledged that work amounted to a small percentage of Reece's overall work.[4]

In addition, although Defendants entirely fail to address this issue, it is undisputed that Reece and Humbert worked on multiple projects together.   The Opinion and Order addressed the lack of a subcontractor agreement, despite Reece and Humbert's insistence that their relationship was that of a contractor and subcontractor.  In addition, the invoices did not distinguish the two

---

[4] Courts have engaged in a "proportional analysis" of shared customers.  *See e.g., Bd. of Trs. of the Plumbers, Pipefitters & Mechanical Equip. Serv. v. R. & T. Schneider Plumbing Co.*, No. 1:13-cv-858,2015 U.S. Dist. LEXIS 89917 at *48 (S.D. Ohio July 10, 2015); *Rd. Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co.*, 669 F.3d 790 (6th Cir. 2012).  In this case, however, such an analysis would not provide an accurate picture considering the large size of at least one of the few shared customers—Proctor & Gamble—as well as the relatively small percentage of work done by Reece for the shared customers.

businesses nor did they disclose the alleged contractor-subcontractor relationship to clients. As a result, the undersigned found that the businesses were virtually indistinguishable in this regard. Consequently, at the very least, the Humberts/Genesis Mechanical and Reece/GMS had overlapping customers when they were working on projects together.

Accordingly, when considering the shared customers, as well as the work done together, this factor weighs in favor of alter ego status.

### f. Supervision and Ownership

This factor weighs against alter ego status. It is undisputed that the two companies are not owned by the same people, and there is no evidence in the record to suggest that the two share any supervisors.

### g. Intent

With respect to intent, on one hand, Defendants argue the Court failed to consider the intent factor, but then assume "the Opinion apparently found Plaintiffs' argument meritorious, thereby misconstruing Defendants' actions as deceitful." (Doc. 62, PageID 1489).

Defendants essentially argue then that there is no evidence of intent to evade labor obligations, and in fact, there is evidence of the opposite and thus, the two companies cannot be alter egos of one another. The Court disagrees that without a finding of intent there can be no finding of alter ego status. Of significance, "an employer's intent to evade the obligations of a collective bargaining contract is merely one of the factors to be considered and is not a prerequisite to the imposition of alter-ego status." *Trs. of the Detroit Carpenters Fringe Benefit Funds v. Indus. Contr., LLC*, 581 F.3d 313, 318 (6th Cir. 2009) (quoting *Fullerton*, 910 F.2d at 337).

Defendants also take issue with the Court's finding that the factual dispute as to whether Reece had a conversation with Baker in 2008 about starting his own business and declining to

9

partner with Humbert was immaterial. This argument is not well-taken. The Opinion and Order cites considerable evidence of substantial entanglement. In other words, the Court found that regardless of Reece's intent, Reece/GMS's actions sufficiently demonstrated that Reece/GMS is the alter ego of the Humberts/Genesis Mechanical.[5] Because intent is not a prerequisite to the imposition of alter ego status, the Court declines to reconsider its Opinion and Order in this regard, as it would not prevent a clear error of law.

In sum, the undisputed evidence demonstrates that when considering all the factors together, Reece/GMS is the alter ego of the Humberts/Genesis Mechanical. Upon further review of the record, the Court finds it did not give more weight to the "operations" factor as Defendants argue. Rather, the focus on the "operations" factor was predicated on the vast amount of evidence presented, which established there were few practical differences between Reece/GMS and the Humberts/Genesis Mechanical. Accordingly, the Court declines to reconsider its conclusion that Reese/GMS is the alter ego of the Humberts/Genesis Mechanical.

### 2. GMS, Inc.

Defendants argue the Court did not sufficiently address whether GMS, Inc. is the alter ego of the Humberts/Genesis Mechanical after it was incorporated in August 2011.[6] They argue the Court limited its analysis to facts that existed from 2008 until 2010, at the time when Reece first started GMS as a sole proprietorship.

---

[5] There is limited evidence in the record regarding intent. For example, Reece admitted he purposefully chose to use the entirety of the name Genesis Mechanical in order to make GMS appear to be a larger company. The Court acknowledges, however, that this alone does not establish Reece did so in order to avoid labor obligations.

[6] The Court notes that such an argument was not in the forefront of Defendants' summary judgment briefing, likely because they argued that Reece/GMS was never the alter ego of the Humberts/Genesis Mechanical, regardless of whether GMS was incorporated.

Defendants contend that liability should end after GMS, Inc. was incorporated because the evidence establishes GMS, Inc. is not the alter ego of the Humberts/Genesis Mechanical. The Court agrees.

Defendants cite to a substantial amount of undisputed evidence in the record in support of their position.  For example, GMS, Inc. is owned by Reece, along with Doug Biehl, and Phil Thyen.  (Reece Dep. at 30:10-25, 31:1-5; Doc. 41-1, PageID 357).  Like GMS, GMS, Inc. does not share assets, tools, vehicles or other equipment with the Humberts/Genesis Mechanical.  (See e.g. Reece Dep. at 20:21-25, 21:23-25, 22:1-7, 80:24-25, 81:1-19, 89:5-10; Doc. 41-1, PageID 354-55, 369, 371; Humbert Depo. at 117:11-23, 124:3-5, 126:20-25, 127:2-4, 134:20-25; Doc. 41-3, PageID 428, 430-31, 433).  Moreover, Reece testified that GMS, Inc. never shared any employees with the Humberts/Genesis Mechanical.  (Reece Dep. at 26:2-25, 27, 28, 29:1-10, 33:3-17, 81:12-16; Doc. 41-1, PageID 356-57, 369).

As for the operations element, Defendants cite to the record as follows:

> For example, GMS, Inc. does not use CBS's address, phone number, or EIN for tax purposes. (Reece Dep. at 37:12-16, 39:5-25, 52:7- 22, 82:5-25, 83:1-2, Doc. # 41-1, PAGEID ## 358, 359, 362, 370; Groppenbecker Dep. at 41:22-25, 42:1-15, 48:20-25, 49:1-5, 50:4-25, 51:1-9, 51:22-25, 52:1-5, Doc. # 41-4, PAGEID ## 469,472-74). GMS, Inc. has never shared the same bank account with Humbert/GM. (Reece Dep. at 66:19-25, 67:1-14; Doc. # 41-1, PAGEID # 366; Groppenbecker Dep. at 23:16-25, 24:1-8, Doc.# 41-4, PAGEID # 460). GMS, Inc. ceased using the accounting firm, CBS, long ago. Michele Wuebbling of TM Wuebbling has performed these services on behalf of GMS, Inc. (Reece Dep. at 37:12-22, 39:5-10, Doc. # 41-1, PAGEID ## 358-359).

(Doc. 62, PageID 1497).

Additional evidence of disentanglement also exists.  For example, the evidence shows that any subcontractor relationship between Reece/GMS and the Humberts/Genesis Mechanical ended before GMS was incorporated.  (Doc. 41-1, PageID 358, 371).  The Trust Funds' payroll audit referenced above was conducted in 2009, years before GMS was incorporated.  Moreover,

11

in the Opinion and Order, the Court explained that CBS prepared fringe benefit contribution reports that were submitted to the Trust Funds, along with contributions on a monthly basis. Nothing on the fringe benefit contribution reports or checks distinguished Genesis Mechanical from GMS. Those monthly contributions, however, appear to have ended in 2010. Plaintiffs cite no evidence to the contrary, and only argue that the Court has already decided this issue.

Accordingly, upon further consideration of the undisputed evidence, the Court finds that after GMS, Inc. was incorporated, the operations entanglement ceased, as well as any other previous entanglement. Without such evidence, the Court must conclude that GMS, Inc. is not the alter ego of the Humberts/Genesis Mechanical. To conclude otherwise would hold GMS, Inc. liable for labor obligations long after the two companies became disentangled. When considering the fact that the Court previously found that Reece/GMS is not independently bound by the CBA, such a result would be manifestly unjust. In sum, the Court declines to conclude that simply because Reece/GMS was the alter ego of the Humberts/Genesis Mechanical in 2008, it is forever their alter ego, regardless whether the companies' identities almost entirely diverged as time went on. This conclusion does not appear to be contrary to Sixth Circuit precedent. *See e.g. N.L.R.B. v. Crossroads Elec., Inc.*, 178 Fed. Appx. 528, 534-35 (6th Cir. 2006).[7] Accordingly, the Court amends its judgment in this regard to prevent a manifest injustice.

## IV. CONCLUSION

Consistent with the foregoing, the Court finds that GMS, Inc., incorporated in August 2011, is not the alter ego of the Humberts/Genesis Mechanical and thus, need not comply with

---

[7] The Court acknowledges that the outcome in *Crossroads* was different. However, considering the particular facts in this case, the Court finds that the conclusion in this case is not wholly inconsistent with the analysis in *Crossroads*. Although the Sixth Circuit in *Crossroads* explained the Board in *George C. Shearer Exhibitors Delivery Service,* 262 N.L.R.B. 622 (1982) discounted subsequent divergence, the Board did so because it explained "small changes in the day-to-day running of the business mean nothing." *Crossroads Elec., Inc.*,178 Fed.Appx. at 535 (quoting *Shearer*, 262 N.L.R.B. at 624). In this case, more than just small changes in day-to-day operations were made.

obligations under the CBA after the date of incorporation.  Accordingly, Defendants Steve Reece and Genesis Mechanical Services, Inc.'s Motion for Reconsideration and/or Clarification (Doc. 62) is **GRANTED IN PART**.  Defendants Steven Humbert and Susan Humbert, D/B/A Genesis Mechanical's Motion for Reconsideration and/or Clarification (Doc. 64) is **DENIED**.  Defendants are **ORDERED** to comply with the Court's Opinion and Order (Doc. 61) in all other respects.  Plaintiffs' Motion to Compel Defendants' Compliance with Opinion and Order (Doc. 71) is **DENIED WITHOUT PREJUDICE AS MOOT,** subject to refiling, if necessary.

       **IT IS SO ORDERED.**

                                         _s/Michael R. Barrett_
                                         Michael R. Barrett, Judge
                                         United States District Court